## Case No. 17,988.

### WOODRUFF et al. v. The LEVI DEARBORNE.

[4 Hall, Law J. 97.]

Circuit Court, D. Georgia. Dec. Term, 1811.[1]

ADMIRALTY LAW — MARITIME LIENS — REPAIRS — HOME AND FOREIGN PORTS.

[1. The admiralty law cognizable in the federal courts is not the civil law of the Roman government, but the admiralty law of Great Britain.]

[2. There is a maritime lien for material and labor furnished in repairing a vessel in a foreign port. The ports of the different states are

---

[1] [Affirming Case No. 17,987.]

foreign to each other within the meaning of the admiralty law in relation to liens.]

[Cited in Jane v. The President, Case No. 18,201; The Jerusalem, Id. 7.294; Leland v. The Medora, Id. 8,237; Ramsay v. Allegre, 12 Wheat. (25 U. S.) 637.]

[3. Where a British ship was adjudged forfeited to the United States and was ordered sold by the marshal, but the purchaser failed to comply with his contract so that a subsequent sale was necessary, held that the vessel was subject to a maritime lien in the hands of the last purchaser for materials and labor expended in making repairs between the dates of the two sales.]

[Appeal from the district court of the United States for the district of Georgia.]

[This was a libel by Woodruff & Brant and others against the ship Levi Dearborne to enforce an alleged lien for repairs. From a decree of the district court dismissing the libel (Case No. 17,987), the present appeal was taken.]

The libel charges, that the ship is answerable specifically for materials furnished and work done, in refitting her, between the ninth of May and the seventh of June, 1811. That the ship Levi Dearborne, formerly the Little Sally, a British bottom, was forfeited to the United States, and a sale decreed to be made, on the eighteenth of April, 1811. That she remained unsold. That the materials and work were furnished by request of the master. The claim states that the ship was forfeited, for a violation of the non-intercourse laws, and sold on the 18th of April, 1811. That the terms of sale not being complied with, she was resold on the 18th of June last; when the claimant (Dearborne) became the purchaser, and received from the marshal a bill of sale, dated April 18th. That he purchased on the faith of the government and its officers, without being notified of the supplies and repairs alleged in the libel. That Captain L. did not take charge of the ship, by authority from the claimant, nor was he authorized by the claimant to direct the supplies and repairs, but received his authority from Scribner, who was in possession.

Mr. Noel, for the libellant.

It is alleged in the libel and proved by the testimony, that when the materials and repairs were furnished, there was no responsibility to the libellants, except that of the ship. There was no actual ownership or existing operative title. The right acquired by the government, by seizure and condemnation, before sale, was imperfect. Scribner was in possession for a short time, but without title; he had not paid the purchase money. The actors in this suit did not know, or treat with Scribner, as the owner. They furnished the materials and work on the sole credit of the ship. The claim admits that Scribner was not the owner, and it is not proved that Scribner had assumed payment. Captain Lightbourne did not call for the repairs and materials, on the credit of any other person, but as master of the ship.

2d. The appellants have a specific remedy against the ship, admitting the statement of facts made by the respondent. The district court has jurisdiction, as an instance court of admiralty, to make the ship liable for repairs and materials. This jurisdiction is derived from the civil law. In maritime cases the courts of the United States are governed (except in questions of prize) by principles of the civil law, or by positive statutes. Every man who has repaired or fitted out a ship, or lent money to be employed in those services, has by the civil law, a lien on the ship. Abb. Shipp. p. 151; Domat, Civil Law, B.

3d. It may be said that the maritime law is a part of the common law of Great Britain, and that the common law is the law of the United States, where not superseded by positive statutes. The correctness of these positions shall be considered, after having taken notice of the British adjudications, upon this subject.

There is no rule of the common law, which makes property subject to specific liability, or creates a lien by implication, as a security for the performance of a contract or payment of debt. This is a remedy peculiar to the civil law. The exercise of it by the courts of admiralty early became a source of jealousy, and produced the statutes 13th and 15th Richard II. Yet we find that even the courts of common law disregarded the restrictions intended by those statutes, for several centuries after they were enacted. It has uniformly since been held, that suit may be maintained in the admiralty for seamen's wages, though the agreement was made on land. Rolle, Abr. 533, 2 Bac. Abr. 181. In Hilary term, 8 Car. II., it was resolved by all the judges, that if suit be in the admiralty for building, amending, saving or necessary victualling of a ship, against the ship herself, no prohibition shall be granted, though this be done within the realm. Cro. Car. p. 296. The first case opposed to that decision is Watkinson v. Bernadiston, 2 P. Wms. 367, afterwards Buxton v. Snee, 1 Ves. Sr. 154. Notwithstanding these cases, we find Lord Mansfield declaring, in unqualified terms, that whoever supplies a ship with necessaries has a treble security: (1) The master; (2) the ship; (3) the owner. His lordship adds: "Suppose the owner in this case, had delivered the value of the goods in specie, to the master, with order to pay it over to the creditors, and the master had embezzled the money, it would have been no concern of the creditors, for they trust specifically to the ship, and generally to the owners." Cowp. 639; Rich v. Coe. Mr. Abbot has mentioned the decision by Lord Mansfield, in Wilkins v. Carmichael, 1 Doug. 101, as somewhat repugnant to the former. His lordship there is made to say, that "work done for a ship in England is supposed to be on the personal credit of the employer," the amount of which is, that

work done where the owner is present shall be considered prima facie as done on his credit. From this review of the adjudged cases in England, it must be inferred, that the doctrine by which a lien upon the ship has been restrained to a foreign ownership is not so clearly settled, as stated by Abbot. Judge Winchester has remarked in Stevens v. The Sandwich [Case No. 13,409], that "the reports of decisions in that country, are perfectly irreconcilable. That no principle can be extracted from the adjudged cases in England, which will explain or support the admiralty jurisdiction, independent of the statutes, or the works of jurists who have written on the general subject."

But, however well settled the doctrine may be in the British courts, it cannot operate here, in repugnance to a principle of maritime law. From what source do we derive those principles? They do not take effect here, as a part of the common law of England. The state governments adopted the common law as to all cases to which it is adapted. But this is not the medium through which the maritime code has obtained operation in the United States. The courts of the United States are tribunals of special jurisdiction. Their powers are derived, exclusively, from the constitution and laws of the United States. Const. art. 3, § 2: "The judicial power shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and treaties." Various classes of cases are specified. Among these are "all cases of admiralty and maritime jurisdiction, and controversies between citizens of different states, and between citizens and foreigners."

As to real and personal remedies, no principles of decision are designated by the constitution—they were left to be prescribed by the legislature. The legislature has not prescribed. The lex loci has therefore necessarily been resorted to by the courts, and in most cases which have arisen. the common law has prevailed. not as the law of the nation, but as the law of the place—not of the state where the court sits, but as the law of the place where the cause of action may have arisen, in whatever clime, or under whatever government. Respecting maritime cases, principles of decision were recognized and adopted by the letter of the constitution. The terms there used are "cases of admiralty and maritime jurisdiction." These terms relate to a jurisdiction, peculiar in its operation, and in the principles by which it adjudicates. They essentially appropriate to that jurisdiction, those peculiar principles which characterize "admiralty and maritime cases," and by which alone they must be decided. Hence. if congress should by law enact. that a cause of action arising on the high seas, shall be cognizable by courts proceeding according to the course of the common law, would not such provision, by destroying the principle of decision, break down a jurisdiction created by the constitution? We infer, that the maritime code is the law by which the right of the libellants is to be decided. That this system operates, not as it does in England, as a set of customs, forming a part of the lex non scripta, but as a separate and distinct code.

Mr. Harris, for claimant, commenced his argument, and was stopped by the court.

JOHNSON, Circuit Justice. It must be conceded, that the question made in this cause, is one hitherto unsettled in the courts of the United States. The argument in support of this libel, has proceeded on the ground, that the admiralty law of the United States, is the civil law of the Roman government; but the civil law has undergone many changes and modifications, which we are not bound to trace. The admiralty law of Great Britain is the admiralty law here. The lien on vessels for material-men and ship-wrights, exists only in a foreign port. Where the owner is present and resident, the common law principle must govern. In such case, no lien on the vessel is created. In the case of an owner, who, though present, when the work and materials are furnished, is transient and non-resident, I am disposed to think otherwise, and that in such case, the lien attaches. It is proper also to state, what shall be deemed a foreign, and what a domestic port, as to this question: The seaports of the different states ought, in this respect, to be considered as foreign ports. in relation to each other. Charleston, for instance, is a foreign port, as to a claim of this nature. made in Savannah. In the present case, the ship must be considered as having become a domestic ship from the time of the marshal's sale. The decree of the district court is therefore affirmed.